## THE TITANIC.

### (District Court, S. D. New York.   January 17, 1913.)

SHIPPING (§ 209*)—PROCEEDINGS FOR LIMITATION OF LIABILITY—PROCEDURE.
    In a proceeding by the British owner of a British vessel lost at sea for
    a limitation of liability as against claims sued in the United States, the
    right of a claimant to invoke the English law, by which the measure of
    the limitation is based on the tonnage of the vessel, will not be deter-
    mined on a motion to direct the commissioner to make findings as to mat-
    ters wholly irrelevant under the law of the United States, but must be
    directly presented by proper pleadings.
    [Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 646–655, 659,
    661, 662; Dec. Dig. § 209.*]

In Admiralty.   Petition by the Oceanic Steam Navigation Com-
pany, Limited, as owner of the steamship Titanic, for limitation of lia-
bility.   On motion by one Anderson, a damage claimant, to require
the commissioner to ascertain the tonnage of the Titanic, in the sense
in which that word is used in the British statutes regarding the limi-
tation of liability for losses at sea.   Denied.

See, also, 204 Fed. 295.

Hunt, Hill & Betts, of New York City (Frederick M. Brown, of
New York City, of counsel), for the motion.

J. Parker Kirlin, Charles C. Burlingham, and Norman B. Beecher,
all of New York City, opposed.

HOUGH, District Judge.   The exact thing moved for seems simple,
and indeed harmless.   It can do no harm to ascertain the tonnage of
the Titanic, in the sense of the statute referred to, or any other sense;
but it is equally true, and just as obvious, that the tonnage of the lost
steamer is wholly irrelevant to any procedure for limitation of ship-
owners' liability known to the statute law of the United States.   So
that one first asks why should this record be stuffed with matter so
apparently useless?

By argument it appeared that counsel's theory is that, since the
Titanic was (a) a vessel British owned and of British register, and
(b) lost by collision with an iceberg, and not by the action of another
ship of another nation, therefore her British owners are not entitled
to all of the benefits or privileges awarded by the statutes of the
United States, but may only, under the forms conveniently provided
by the rules of the Supreme Court, enforce that measure of relief
awarded by the only statute vitally affecting the matter, namely, the
British act, which grants a limitation to £8 or £15 per ton as the case
may be.

Obviously this argument suggests important and interesting legal
questions.   If the law of Great Britain applies at all, why does it not
apply all along the line?   If the shipowner cannot limit demands pro-
pounded in the United States in accordance with the law of the United
States, why should he be compelled to pay in the United States more
than he would have been compelled to pay in Great Britain by all

the law of that realm? Under American law, both his liability and the limitation thereof rest upon a homogeneous system of jurisprudence. The British law in respect of limitation in passage tickets is of no more avail against the injured passenger than is the £8 or £15 valuation .effective to extend the shipowner's liability beyond the value of the res in its injured condition, which is the American statutory limit.

But this motion (as argued) seeks to create something which is neither British nor American—a kind of legal centaur which would give to the claimants all the advantages of both systems of law and leave to the shipowner no discoverable defense under either. The merits or demerits of the argument probably depend in their last analysis on the question argued in The Eagle Point, 142 Fed. 453, 73 C. C. A. 569; i. e., whether methods or rules for apportioning and enforcing liability for loss and damage are matters of right or remedy. On this matter The Eagle Point, supra, is by no means the last word; but, whatever may be the result of these interesting queries, there can be no doubt that, before any such detail of administration as is here prayed for is granted, the petitioners are entitled to be heard in a direct proceeding to ascertain whether what they demand is lawful or not.

Being sued in the United States, they have demanded, not as a matter of grace, but of right, the benefit of a federal statute. They have not asked for the benefit of the British statute; still less have they asked for the amorphous compound of statutes above referred to. They are either entitled to what they demand, or they are not. If claimants think they are not, let them answer the petition, or except thereto, and so raise the matter. Until that question is directly settled, the present motion is idle, and should be and is denied.